IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SLAWKO S. WEGRZYN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 11-CV-68-PJC |
| ) | |
| MICHAEL J. ASTRUE, Commissioner of the ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

### OPINION AND ORDER

Claimant, Slawko S. Wegrzyn ("Wegrzyn"), pursuant to 42 U.S.C. § 405(g), requests judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for disability insurance benefits under the Social Security Act, 42 U.S.C. §§ 401 *et seq*. In accordance with 28 U.S.C. § 636(c)(1) and (3), the parties have consented to proceed before a United States Magistrate Judge. Any appeal of this order will be directly to the Tenth Circuit Court of Appeals. Wegrzyn appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Wegrzyn was not disabled. For the reasons discussed below, the Court **AFFIRMS** the Commissioner's decision.

### Claimant's Background

This case presents an unusual question of disability for a time period more than 25 years ago: whether Wegrzyn was disabled pursuant to Social Security laws and regulations at any time between December 12, 1985, his claimed onset date, and his date last insured, December 31, 1986. A hearing before the ALJ was held in Miami, Oklahoma, on September 3, 2008. (R. 642-79).

Wegrzyn testified that he was working as a civilian sheet metal mechanic for the military base at Fort Carson, Colorado in December 1985. (R. 655-57). As part of his employment, he was lifting a 150-lb. security door for installation on December 12, 1985 when his back "snapped," and he sought immediate medical help. (R. 657). The initial diagnosis at Penrose Community Hospital was that Wegrzyn had suffered a pulled muscle. (R. 657-58). He continued under the care of a physician, Dr. Walker, for at least two years, including an 8-day hospitalization in 1986. (R. 659-60). His back never improved, and he had never returned to any kind of employment, full or part-time. (R. 660).

Wegrzyn testified that after the accident, he was unable to walk, stand, or sit for long periods of time. (R. 661-62, 669-70). He could sit for only 10 to 20 minutes. (R. 669-70). He would lie down to relieve his pain. *Id.* He watched television in a recliner, or he spent time in bed. (R. 662). He took anti-inflammatory medications and amitriptyline (or Elavil, its brand name) for depression. (R. 662, 670). The amitriptyline made him "real sleepy." (R. 670). He was taking pain medication, but at the hearing, he could not remember what kind of pain medication he had taken during the relevant period. *Id.*

Wegrzyn testified that, during the relevant period, he was seeing a mental health professional at the VA facility in Denver, Colorado. (R. 662-63). At the time, he was married and had a one-year-old child. (R. 663-65). Wegrzyn's testimony was that he played with his daughter "once in a while" but not as often as he would have if he hadn't been injured. (R. 665).

Wegrzyn testified that during the relevant period, he had attempted rehabilitation and had explored whether there were any job positions he could fill. (R. 670-71). Another problem he had with employment was that he had suffered an eye injury in Vietnam in 1970, and his limited eyesight prevented him from being able to perform clerical-type jobs. (R. 671-74). He had

2

developed keratoconus, and he received cataract surgeries in 1995 and 2001. (R. 672).

A one-page document identified with a stamp as Bone & Joint Surgery, Colorado Springs, indicates that Wegrzyn was seen there in 1983 due to an injury that smashed his left index finger. (R. 362). An entry dated December 20, 1985 states that Wegrzyn presented with back pain after lifting a door at work. *Id.* He had restricted range of motion and positive bilateral straight leg raising. *Id.* The note states: "X-rays: L-spine x-rays show marked narrowing and spurring of the L4-5 interspace." *Id.* The assessment was post-traumatic degenerative disc disease at the L4/L5 level. *Id.* Indocin and Soma were prescribed. *Id.* A subsequent entry dated January 9, 1986 states that Wegrzyn did not received any relief from medications and rest. *Id.* His symptoms remained the same, and he was admitted to the hospital for bed rest and evaluation. *Id.*

While Wegrzyn was hospitalized a bone scan and a CT scan were performed. A one-page report dated January 13, 1986 interprets the bone scan, finding "increased activity" in areas including the "lower lumbar spine in the region of the L-5 vertebral body," but it also stated that the finding was "not likely related to osteoarthritis. (R. 364). A report of the CT scan of the lumbar spine performed January 16, 1986 gave impressions of findings of facet arthropathy at L3/L4, Schmorl's nodes at L4/L5, and bulging of the L5/S1 disc. (R. 363). A note indicates that he was discharged from the hospital on January 17, 1986. *Id.*

A note dated February 6, 1986 from Sterling Optical in Denver Colorado stated that Wegrzyn had keratoconus and should be checked yearly. (R. 361).

A note from Bone & Joint Surgery dated March 26, 1986, states that Wegrzyn was under their professional care and was indefinitely disabled. (R. 164). The diagnosis was low back pain with myofascitis. *Id.*

Kenneth Weisiger, M.D. performed a disability evaluation on May 29, 1986. (R. 165-68). On examination, Dr. Weisiger noted that there was tenderness, including paraspinal muscle tenderness, along Wegrzyn's lumbar spine. (R. 167). Straight leg raising was positive bilaterally. *Id.* Range of motion was limited, and Wegrzyn experienced "marked discomfort" during that testing. *Id.* Gait was slow, and Wegrzyn said he was unable to do heel or toe walking due to pain. *Id.* Dr. Weisiger appeared to diagnose Wegrzyn with degenerative osteoarthritis of the lumbar spine with an abnormal x-ray showing L4/L5 disc space narrowing. (R. 168).

Wegrzyn received medical treatment at the VA, including pain relief services, in 1986 and 1987. (R. 340-359). A note dated April 8, 1987 stated that Wegrzyn complained of blurry vision if he read for more than 20 minutes. (R. 340).

Ronald E. Walker, M.D. wrote a "To Whom It May Concern" letter dated April 3, 1987. (R. 169-70). The letter described the course of Dr. Walker's treatment of Wegrzyn's back since the December 1985 injury. *Id.* Dr. Walker continued to diagnose degenerative joint disease or osteoarthritis of the lumbar spine. (R. 170). He considered that Wegrzyn had reached maximum medical improvment and should not "return to stressful activities involving the back." *Id.*

Wegrzyn was seen for follow-up treatment at the VA on April 22, 1987. (R. 338).

Another disability evaluation examination was completed by Frank O. Franco on May 20, 1987. (R. 333-34). Dr. Franco observed that Wegrzyn's gait was slow and lumbering. (R. 333). He did not completely perform toe and heel walking due to pain. *Id.* Dr. Franco found muscle spasm and tenderness of the lumbar spine. *Id.* Wegrzyn's range of motion was "markedly reduced," and he complained of pain. (R. 333-34). The diagnosis was lumbar spine degenerative disc disease L5/S1. (R. 334). It appears that an x-ray was taken that same day. (R. 335). It

4

showed "[n]arrowing of the disc space at the L4-5 level with discogenic sclerosis of the vertebral bodies and osteophyte formation at this level," with no evidence of subluxation. *Id.* The impression was degenerative disc disease at the L5/S1 level. *Id.*

## Procedural History

Wegrzyn filed an application on August 31, 2006, seeking disability insurance benefits under Title II, 42 U.S.C. §§ 401 *et seq*. (R. 85-88). Wegrzyn alleged onset of disability as December 12, 1985. (R. 85). The application was denied initially and on reconsideration. (R. 67-69, 72-74). The ALJ denied Wegrzyn's request for a hearing and issued an Order of Dismissal on November 26, 2007. (R. 62-63). The ALJ noted that Wegrzyn had originally filed an application on November 17, 1987 which was denied and administratively final. (R. 62). The ALJ noted that Wegrzyn subsequently filed a second application on December 19, 2002 which was dismissed by an ALJ decision on February 5, 2004. *Id.* The ALJ dismissed Wegrzyn's application at issue on the basis of res judicata. (R. 62-63). The Appeals Council vacated the dismissal and remanded to the ALJ for further proceedings by Order dated March 11, 2008. (R. 51-52). The Appeals Council noted that there had been a change on the musculoskeletal listings in 2002 that had not been ruled upon by the previous ALJ's decision in 2004. *Id.* The Appeals Council stated that the current ALJ could take "any further action needed to complete the administrative record." (R. 52). A hearing before ALJ Jeffrey S. Wolfe was held September 3, 2008 in Miami, Oklahoma. (R. 642-79). By decision dated November 28, 2008, the ALJ found that Wegrzyn was not disabled during the relevant period of December 12, 1985 to December 31, 1986. (R. 14-24). On December 13, 2010, the Appeals Council denied review of the ALJ's findings. (R. 4-6). Thus, the November 28, 2008 decision of the ALJ represents the Commissioner's final decision for purposes of this appeal. 20 C.F.R. § 404.981.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Act only if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work in the national economy." 42 U.S.C. § 423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. § 404.1520.[1] *See also Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988) (detailing steps). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Id.*

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hamlin v.*

---

[1] Step One requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. § 404.1510. Step Two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. *See* 20 C.F.R. § 404.1520(c). If the claimant is engaged in substantial gainful activity (Step One) or if the claimant's impairment is not medically severe (Step Two), disability benefits are denied. At Step Three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App.1 ("Listings"). A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to Step Four, where the claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's Step Four burden is met, the burden shifts to the Commissioner to establish at Step Five that work exists in significant numbers in the national economy which the claimant, taking into account his age, education, work experience, and RFC, can perform. *See Dikeman v. Halter*, 245 F.3d 1182, 1184 (10th Cir. 2001). Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. 20 C.F.R. § 404.1520.

*Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004) (quotation omitted).

Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.* The court's review is based on the record taken as a whole, and the court will "meticulously examine the record in order to determine if the evidence supporting the agency's decision is substantial, taking 'into account whatever in the record fairly detracts from its weight.'" *Id., quoting Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994). The court "may neither reweigh the evidence nor substitute" its discretion for that of the Commissioner. *Hamlin,* 365 F.3d at 1214 (quotation omitted).

### Decision of the Administrative Law Judge

The ALJ found that the relevant period was between the alleged onset date of December 12, 1985 and Wegrzyn's date last insured of December 31, 1986. (R. 14). At Step One, the ALJ found that Wegrzyn had not engaged in any substantial gainful activity in the relevant period. (R. 21). At Step Two, the ALJ found that Wegrzyn had a severe impairment of degenerative disk disease of the lumbar spine. *Id.* At Step Three, the ALJ found that Wegrzyn's impairments did not meet a Listing. *Id.* The ALJ specifically considered Listing 1.04, which was one of the musculoskeletal listings that the Appeals Council stated had been changed in 2002. *Id.*

The ALJ determined that Wegrzyn had the RFC to perform light work with a sit-stand option. (R. 22). The ALJ noted that the vocational expert (the "VE") testified that this essentially limited Wegrzyn to sedentary work. *Id.* At Step Four, the ALJ found that Wegrzyn was unable to perform any past relevant work. *Id.* At Step Five, the ALJ found that there were jobs that Wegrzyn could perform, taking into account his age, education, work experience, and RFC. (R. 23-24). Therefore, the ALJ found that Wegrzyn was not disabled at any time through his date last insured of December 31, 1986. (R. 24).

## Review

Wegrzyn makes three arguments that the ALJ's decision should be reversed. First, he argues that he met a Listing at Step Three. Second, Wegrzyn argues that the ALJ did not consider all of his limitations throughout the five-step process. Third, Wegrzyn faults the ALJ's credibility assessment. Regarding the issues raised by Wegrzyn, the undersigned finds that the ALJ's decision is supported by substantial evidence and complies with legal requirements. Therefore, the ALJ's decision is affirmed.

**Step Three and Listing 1.04A**

Wegrzyn argues that he met Listing 1.04A. This listing requires a disorder of the spine, resulting in compromise of a nerve root or the spinal cord with:

> Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

Listing 1.04A. While the ALJ's decision in general is thorough, his discussion of Listing 1.04A was brief:

> There is not evidence of nerve root compression with motor and sensory loss as required [by Listing 1.04A]. Similarly, there is no showing of atrophy of the lower extremities.

(R. 21). The ALJ then gave a specific cite to the record as an example. *Id.*

The Tenth Circuit recently explained that when an ALJ is relying on a lack of evidence to reach his conclusion, an extensive discussion of specific medical evidence may not be essential, although the court emphasized that in such a case there must in fact be no evidence relevant to the listing. *Groberg v. Astrue*, 415 Fed. Appx. 65, 72 (10th Cir. 2011).

Listing 1.04A and the quoted portion of the ALJ's decision make clear that one central issue here is whether there was evidence of motor loss, which requires muscle weakness, whether with or without atrophy. If there was evidence of motor loss that the ALJ was required to discuss but did not, then a second requirement included in Listing 1.04A would be evidence that the motor loss was accompanied by sensory or reflex loss. The ALJ, and the parties in their briefing, do not seem to contest that Wegrzyn met some requirements of Listing 1.04A: he had a disorder of the spine that qualified for this listing, his pain was in an anatomical distribution, his range of motion was limited, and he had positive straight-leg raising.

Thus, the question can be narrowed to whether there was medical evidence of motor loss, as shown by muscle weakness, accompanied by sensory or reflex loss. Wegrzyn cites to the following seven pages in the record as evidence of these required conditions: 268, 286, 293, 354, 362, 366, 370. Plaintiff's Opening Brief, Dkt. #11, pp. 2-3. Of these seven pages, page 268 is from 1979, pages 286 and 293 are from 1984, page 366 is from August 1985 and page 370 is from July 1985. (R. 268, 286, 293, 366, 370). Thus, these five pages are not medical evidence that the ALJ was required to discuss because they are not within the relevant time period of December 1985 to December 1986.

The two remaining pages cited by Wegrzyn to substantiate the remaining requirements of Listing 1.04A are page 354 and page 362. Page 354 appears to be a progress note on August 14, 1986. (R. 354). The undersigned does not see any wording in the hand-written note that indicates anything regarding muscle weakness, sensory loss, or reflex loss, except one portion that states: "DTR & sensory neg." While this entry is perhaps ambiguous, this reviewer finds that the correct interpretation is that the examination performed on August 14, 1986 did not show any problems with deep tendon reflexes or sensory loss. In any event, this entry is not evidence

of such quality that the ALJ was required to discuss it in relation to Listing 1.04A. *Korum v. Astrue*, 352 Fed. Appx. 250, 253-54 (10th Cir. 2009) (unpublished) (ALJ's opinion was thorough, and evidence not mentioned by the ALJ was not of such quality as to require discussion).

Page 362 of the record is one page of type-written notes from several visits Wegrzyn made to Bone & Joint Surgery, including the December 20, 1985 visit after the December 12, 1985 accident, and the January 9, 1986 visit that resulted in hospitalization. In the briefing, Wegrzyn states that this page shows the presence of "asymmetrical deep tendon reflexes." Plaintiff's Opening Brief, Dkt. #11, p. 3. The December 20, 1985 entry states that reflexes, strength, and sensation were all within normal limits, and thus this would be evidence that Wegrzyn did not meet Listing 1.04A. (R. 362). On January 9, 1986, the entry states the following: "reflexes: KJ 1/1, AJ 1/0." *Id.* While this entry may reflect asymmetrical reflexes on that one date, the undersigned finds that this evidence does not rise to the level of evidence showing that Wegrzyn had motor loss, as shown by muscle weakness, accompanied by sensory or reflex loss. In fact, directly after the cryptic entry regarding reflexes is an entry that Wegrzyn's strength was within normal limits. *Id.* Therefore, on that date, Wegrzyn did not have the required finding of motor loss shown by muscle weakness that would support a conclusion that he met all of the requirements of Listing 1.04A. The ALJ's failure to discuss this one entry that may reflect asymmetrical reflexes was not reversible error.

The ALJ's statement that there was not evidence of the required showings of nerve root compression with motor and sensory loss, including no showing of atrophy, was a correct

statement regarding lack of evidence.² Therefore, the ALJ's Step Three finding was supported by substantial evidence.

**Step Five**

Wegrzyn argues that the ALJ was required to consider his nonsevere mental limitations in determining Wegrzyn's RFC and therefore in determining that he was able to perform a substantial number of jobs at Step Five. Plaintiff's Opening Brief, Dkt. #11, pp. 3-4. As Wegrzyn notes, the ALJ determined that if Wegrzyn suffered from depression during the relevant period, it was not a severe impairment. (R. 21). The ALJ discussed the medical evidence regarding Wegrzyn's mental status during the relevant period and relied principally on the treating physician's determination that Wegrzyn did not require treatment in finding that any mental issues were nonsevere. *Id.*

These findings by the ALJ made it clear that he found no limitations related to Wegrzyn's nonsevere mental impairments that needed to be included in the RFC determination. *See, e.g., Qualls v. Astrue*, 428 Fed. Appx. 841, 850-51 (10th Cir. 2011) (unpublished) (rejecting claimant's argument that the ALJ had omitted limitations in the RFC determination that resulted

---

² The ALJ's failure to discuss the entries cited by Wegrzyn is analogous to the failure of the ALJ to discuss the claimant's cardiac problems in *Big Pond v. Astrue*, 280 Fed. Appx. 716, 719 n.2 (10th Cir. 2008) (unpublished). The Tenth Circuit rejected an argument that the Commissioner engaged in *post hoc* justification of the ALJ's decision when the issue raised by the claimant was that the ALJ had failed to discuss her cardiac problems:

> We have simply reviewed the record in order to determine whether, and then to illustrate why, the ALJ's omissions were not legal error. The ALJ was not required to provide grounds in the decision for failing to do what was not required. Thus, neither we nor the Commissioner have relied on a substitute rationale for upholding the ALJ's decision.

*Id.*

from nonsevere mental impairments); *Dray v. Astrue*, 353 Fed. Appx. 147, 150-51 (10th Cir. 2009) (unpublished) (evidence of mild mental impairments did not contradict ALJ's RFC determination omitting any limitations related to mental impairments).

The ALJ's RFC determination and Step Five finding were supported by substantial evidence and complied with legal requirements.

**Credibility Assessment**

Credibility determinations by the trier of fact are given great deference. *Hamilton v. Secretary of Health & Human Services,* 961 F.2d 1495, 1499 (10th Cir. 1992).

> The ALJ enjoys an institutional advantage in making [credibility determinations]. Not only does an ALJ see far more social security cases than do appellate judges, [the ALJ] is uniquely able to observe the demeanor and gauge the physical abilities of the claimant in a direct and unmediated fashion.

*White,* 287 F.3d at 910. In evaluating credibility, an ALJ must give specific reasons that are closely linked to substantial evidence. *See Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995); Social Security Ruling 96-7p, 1996 WL 374186.

The ALJ gave several reasons for declining to accept Wegrzyn's description of his pain and functional abilities during the relevant time period. (R. 23). First, the ALJ noted that Wegrzyn was the "sole source" of information regarding his limitations during the relevant period, with no other sources giving any opinions regarding functional limitations. *Id.* The ALJ stated that Wegrzyn's testimony regarding the relevant period was general and not specific. *Id.* The ALJ also faulted Wegrzyn's testimony for being "virtually indistinguishable in time." *Id.* These comments on the character of Wegrzyn's testimony are similar to observations of demeanor. An ALJ may not rely solely on his personal observations to discredit a claimant's allegations, but he may consider them in his overall evaluation of the claimant's credibility.

*Qualls v. Apfel*, 206 F.3d 1368, 1373 (10th Cir. 2000); SSR 96-7p, 1996 WL 374186 at *8. The ALJ also gave specific examples of details that Wegrzyn could not supply, such as a complete listing of the medications he took during the relevant time period. (R. 23). *See Barker v. Astrue*, 459 Fed. Appx. 732 at *7 (10th Cir. 2012) (unpublished) (affirming credibility assessment partially based on testimony's lack of "specific information about the extent of [claimant's] physical limitations").

The ALJ found that Wegrzyn's failure to produce records related to his workers' compensation claim was another factor weighing against his credibility. (R. 23). During the hearing, there was some discussion of Wegrzyn's workers' compensation proceedings. (R. 658-59). The ALJ in his decision stated that counsel was asked to provide information, including medical reports from the workers' compensation doctors, and he implied that the failure to provide that information was a factor in determining Wegrzyn's credibility (R. 23). In reviewing the transcript of the hearing, however, the ALJ only asked for "information as to the amounts of money he received under workers' compensation." (R. 659). Wegrzyn did produce a one-page summary of the amounts he believed he received from workers' compensation. (R. 163). To the extent that the ALJ relied upon any failure to produce workers' compensation records as a factor in weighing Wegrzyn's credibility, that reliance was misplaced.

The ALJ also stated that Wegrzyn's general statements were outweighed by the specific statements found in the VA treatment records, which the ALJ described in some detail. (R. 17-23). The ALJ found that the objective medical evidence during the relevant period that would support a claim of disabling pain was "scant." (R. 18). He gave specific entries to support this finding. (R. 18-20). A finding that the objective medical evidence is inconsistent with the claimant's allegations of disabling pain is a legitimate factor for an ALJ to consider in making a

credibility assessment. *Kepler*, 68 F.3d at 391 ("consistency or compatibility of nonmedical testimony with objective medical evidence" is one factor that an ALJ should consider in assessing credibility). An ALJ cannot rely solely on a lack of corroborating objective medical evidence, but here the ALJ relied on other factors as well. *Kruse v. Astrue*, 436 Fed. Appx. 879, 886 (10th Cir. 2011) (unpublished).

In addition to his finding that Wegrzyn's subjective complaints were inconsistent with the objective medical findings during the relevant period, the ALJ discussed one entry in the VA records in which the physician noted "functional overlay." (R. 20, 354). The ALJ noted that a finding of functional overlay was one way to reconcile the physical examination reports of mild and normal findings together with Wegrzyn's claims of severe pain. (R. 20). The ALJ also discussed a pain assessment conducted during the relevant period in which it was stated that Wegrzyn did "not appear to be motivated to address his pain problems in an active manner, instead preferring to wait for a cure." (R. 20, 348, 350). These were specific, legitimate reasons to find Wegrzyn less than fully credible, and they were supported by substantial evidence. *See, e.g., Rother v. Chater*, 1997 WL 196692 *1 (10th Cir.) (unpublished) (ALJ found claimant's credibility was reduced due to functional overlay); *Matthews v. Astrue*, 231 Fed. Appx. 804, 807-08 (10th Cir. 2007) (unpublished) (motivation, including failure of claimant to exhaust all means to obtain relief, was a legitimate factor supporting ALJ's adverse credibility assessment); *Briggs v. Astrue*, 221 Fed. Appx. 767, 772 (10th Cir. 2007) (unpublished) (claimant's lack of motivation to obtain treatment for his obesity and smoking was a legitimate factor for ALJ to consider in credibility assessment); *Courtney v. Astrue*, 2011 WL 3511008 *6 (E.D. Tenn.) (ALJ's adverse credibility assessment was supported by substantial evidence, including medical finding of functional overlay); *Buhr v. Astrue*, 2009 WL 2762351 *12 (W.D. Wis.) (ALJ's credibility

finding, which cited to a finding of functional overlay as one basis for credibility finding, affirmed).

Wegrzyn's attack on the ALJ's credibility assessment is wide-ranging, with many of the statements in the brief consisting of one-sentence arguments. Plaintiff's Opening Brief, Dkt. #11, pp. 4-7. The Tenth Circuit has addressed waiver of arguments that are not properly developed. *Wall v. Astrue*, 561 F.3d 1048, 1066 (10th Cir. 2009). In *Wall*, the court, discussing an argument related to the claimant's RFC, noted that at the district court level, the claimant had merely alleged, several times, that the ALJ had failed to consider the objective medical evidence. The appellate court said that "[b]ecause Claimant's counsel failed to present any developed argumentation in regard to Claimant's physical impairments, the district court obviously viewed this issue as waived." *Id.* The Tenth Circuit called the claimant's argument at the district court "perfunctory," and said that it had deprived that court of the opportunity to analyze and rule on that issue. *Id.* (quotation and citation omitted). *See also Krauser v. Astrue*, 638 F.3d 1324, 1326 (10th Cir. 2011) (Tenth Circuit's review is limited to issues the claimant preserved at the district court level and adequately presented on appeal); *Eacret v. Barnhart*, 120 Fed. Appx. 264, 265-66 (10th Cir. 2005) (court is not required to speculate on what a party is arguing or craft her arguments for her). This Court views Wegrzyn's arguments related to the ALJ's credibility assessment to be perfunctory and inadequately developed to allow this Court to analyze and rule on these issues, and the arguments are therefore waived.

Even in the absence of a finding of waiver, Wegrzyn's arguments attacking the ALJ's credibility assessment are not persuasive. Wegrzyn first includes one sentence stating that the ALJ did not indicate which statements he believed and which he rejected. Plaintiff's Opening Brief, Dkt. #11, p. 4. To the contrary, the ALJ made clear in his decision that he agreed that

15

Wegrzyn had some pain resulting from his back injury, and he therefore limited Wegrzyn to light work with a sit-stand option. (R. 22). Wegrzyn next complains that the ALJ mentioned that he watched television, arguing that minimal activities of daily living do not support an adverse credibility finding. The ALJ mentioned television watching, but nothing in his decision indicates that it was a primary reason for his credibility assessment. Wegrzyn's argument is therefore misplaced.

It is difficult to decipher the thrust of the next paragraph of Plaintiff's Opening Brief, in which Wegrzyn first notes the ALJ's comment that Wegrzyn's testimony was general in nature and "indistinguishable in time." Plaintiff's Opening Brief, Dkt. #11, p. 5. Wegrzyn complains that the ALJ interrupted the questioning during the hearing on multiple occasions, but it is unclear how this relates to the ALJ's adverse credibility finding. Wegrzyn then complains that the ALJ "miscast" testimony regarding disability income. This reviewer is unable to detect in what way the ALJ "miscast" testimony, and even if the ALJ made some error, again the connection to the issue of credibility is unexplained.

The next paragraph of Wegrzyn's brief makes a tangential argument related to Wegrzyn's memory of the events in 1985-86, apparently arguing that it is natural for memories to fade with time, which the ALJ stated in his decision. While it may be natural to lose specific memories after the passage of time, the ALJ's point was that Wegrzyn had the burden of proving his claim of disability, and his lack of specific memories from the relevant time period made it difficult for him to carry that burden. In the same paragraph, Wegrzyn refers to the ALJ's comments regarding the workers compensation case as described earlier in this Opinion and Order. The undersigned agrees that this portion of the ALJ's decision, to the extent it was one factor he considered in making his adverse credibility determination, was erroneous. However, the ALJ

16

relied on other legitimate, specific factors that were supported by substantial evidence, and therefore this erroneous discussion is not fatal to the ALJ's adverse credibility assessment. *Lax v. Astrue,* 489 F.3d 1080, 1089 (10th Cir. 2007) (in spite of a legally flawed finding by ALJ, there was still substantial evidence supporting ALJ's ultimate finding); *Tom v. Barnhart*, 147 Fed. Appx. 791, 793 (10th Cir. 2005) (unpublished) (ALJ's improper questioning of treating physician's impartiality was not fatal to his discounting of physician's opinion when he articulated other legitimate reasons).

Continuing in a rambling fashion, Wegrzyn next discusses the VA records, stating that most of them were after the date last insured. Plaintiff's Opening Brief, Dkt. #11, p. 6. He complains that the ALJ was selective in his discussion of the VA records, but Wegrzyn gives no examples. This paragraph does not present a developed argument that is capable of analysis and consideration.

The next paragraph continues the desultory path by beginning a discussion of arthritis and pain. *Id.* The last sentence states that the ALJ "opened the door" to evidence after the date last insured. Again, this reviewer is left without any explanation of how the apparently random statements making up this paragraph relate to the ALJ's adverse credibility finding. These sentences do not constitute a developed argument that is sufficient for review. The next paragraph contains a discussion of what issues Wegrzyn believes are at issue in the case, and this discussion does not appear to relate to the issue of credibility. Plaintiff's Opening Brief, Dkt. #11, p. 7.

Wegrzyn then complains that the ALJ should not have relied on "functional overlay" as one reason supporting his adverse credibility finding, but he does not cite any authority for his argument that functional overlay "does not make Claimant not credible." *Id.* As the Tenth

Circuit has noted, "[a] party's failure to cite any authority 'suggests either that there is no authority to sustain its position or that it expects the court to do its research.'" *Flores v. Astrue*, 246 Fed. Appx. 540, 543 (10th Cir. 2007) (unpublished), *quoting Rapid Transit Lines, Inc. v. Wichita Developers, Inc.*, 435 F.2d 850, 852 (10th Cir. 1970). The Court earlier in this Opinion and Order included citations to several cases that approved of inclusion of functional overlay as one factor to be considered in an adverse credibility assessment. Wegrzyn inexplicably continues this paragraph by saying that the ALJ "failed to even consider that Claimant should have been evaluated for a somatoform disorder." Plaintiff's Opening Brief, Dkt. #11, p. 7. Wegrzyn never asked for a consultative examination to be evaluated for a somatoform disorder and did not raise the issue at the hearing before the ALJ. When a claimant is represented by counsel, the ALJ can ordinarily rely on counsel to structure and present the claimant's case. *Hawkins v. Chater*, 113 F.3d 1162, 1166-67 (10th Cir. 1997).

Wegrzyn concludes his argument with what appears to be a standard paragraph of generalities, such as a statement that the "required specific linkage of credibility and substantial evidence is impermissibly missing in this case." Plaintiff's Opening Brief, Dkt. #11, p. 7. There is no explanation of how these generalities are applicable to the case before the Court, and therefore this paragraph does not present reviewable arguments.

When presented with multiple attacks on a credibility assessment, the Tenth Circuit said that the only question it needed to consider was whether the ALJ's adverse credibility assessment "was closely and affirmatively linked to evidence that a reasonable mind might accept as adequate to support that conclusion." *Stokes v. Astrue*, 274 Fed. Appx. 675, 685-86 (10th Cir. 2008). The Tenth Circuit found no reason to overturn the ALJ's credibility determination. *Id.* This Court also finds that the ALJ's credibility assessment was closely and affirmatively linked

to evidence that supported the conclusion that Wegrzyn was not fully credible.

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. The decision is **AFFIRMED**.

Dated this 6th day of June 2012.

_____
Paul J. Cleary
United States Magistrate Judge